## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

CHARLES OSCAR BASSEY       *
           Plaintiff,

      v.                    *    CIVIL ACTION NO. DKC-08-3262

ANNE WIDEMAN PHD       *
           Defendant.
                      ***

## <u>MEMORANDUM OPINION</u>

## PROCEDURAL HISTORY

Plaintiff is a Maryland Department of Public Safety and Correctional Services inmate housed at Patuxent Institution ("Patuxent") in Jessup. On December 4, 2008, the court received for filing this 42 U.S.C. § 1983 civil rights action, which alleges that in 2008 Plaintiff was thrice stripped naked and restrained to a bunk without a mattress on the L-1 Unit (Acute Mental Health Unit) located at Patuxent. Paper No. 1. Plaintiff states that Defendant is the chief psychologist who runs the mental health unit. He maintains that she is allowing this "treatment" to happen and she can "make the treatment stop." *Id.* Plaintiff seeks the award of $5,000.00 in damages for each time he was restrained.

Defendant has filed a Motion to Dismiss, or Alternatively, Motion for Summary Judgment, which remains unopposed as of the within signature date.[1] Paper No. 11. Oral hearing is not necessary. The matter may be determined on the briefing before the court. *See* Local Rule 105.6. (D. Md. 2008). For reasons to follow, Defendant's Motion, construed as a Motion for Summary Judgment, shall be granted.

---

[1] The *pro se* Plaintiff received notification of Defendant's dispositive filing pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975). Paper No. 11.

**STANDARD OF REVIEW**

Summary judgment is appropriate under Rule 56(c) of the Federal Rules of Civil Procedure when there is no genuine issue as to any material fact, and the moving party is plainly entitled to judgment in its favor as a matter of law.   In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986) the Supreme Court explained that in considering a motion for summary judgment, the "judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."   A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id*. at 248.  Thus, "the judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented."  *Id*. at 252.

The moving party bears the burden of showing that there is no genuine issue as to any material fact.  No genuine issue of material fact exists if the nonmoving party fails to make a sufficient showing on an essential element of his or her case as to which he or she would have the burden of proof.   *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).  Therefore, on those issues on which the nonmoving party has the burden of proof, it is his or her responsibility to confront the summary judgment motion with an affidavit or other similar evidence showing that there is a genuine issue for trial.

In undertaking this inquiry, a court must view the facts and the reasonable inferences drawn therefrom "in a light most favorable to the party opposing the motion."  *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)); *see also E.E.O.C. v. Navy Federal Credit Union*, 424 F.3d 397, 405 (4th Cir.

2005).  The mere existence of a "scintilla"of evidence in support of the non-moving party's case is

not sufficient to preclude an order granting summary judgment.  *See Anderson*, 477 U.S. at 252.

This court has previously held that a "party cannot create a genuine dispute of material fact

through mere speculation or compilation of inferences." *Shin v. Shalala*, 166 F.Supp.2d 373, 375

(D. Md. 2001) (citation omitted).   Indeed, the court has an affirmative obligation to prevent

factually unsupported claims and defenses from going to trial.  *See Drewitt v. Pratt*, 999 F.2d 774,

778-79 (4th Cir. 1993) (quoting *Felty v. Graves-Humphreys Co.*, 818 F.2d 1126, 1128 (4th Cir. 1987)).

## ANALYSIS

### Background

There is no dispute that on a number of occasions Plaintiff has been transferred from

Patuxent to the Correctional Mental Health Center in Jessup ("CMHCJ")[2] for treatment of his acute

psychiatric problems.  According to Defendant, CMHCJ is a 150-bed mental health facility that

houses and treats inmates with serious mental illness.   It has several units, including the L-1 Unit,

which is a unit for inmates who need an acute treatment setting and/or more restrictive environment

to try to prevent self-injurious behavior and injury to others.  Paper No. 10, Ex. A at Wideman Aff.

Defendant states that the L-1 Unit contains 17 beds and two restraint cells which are used to

significantly and temporarily restrict the actions of an inmate who is experiencing extreme

psychiatric problems or crisis.[3]  *Id*.   Each restraint cell has a metal bunk.  *Id*.  Clothing and

mattresses may be removed so that an inmate may not use the materials for self-injury or suicide

---

[2]      CMHCJ is located on the Patuxent property.

[3]      Defendant states that the use of therapeutic restraints is a medical decision that is based on the psychiatrists' clinical judgment and only a physician may order the use of restraints and conditions.  Paper No. 10, Ex. A at Wideman Aff.  Wideman, as a psychologist, claims she cannot issue an order for restraints. *Id*.

attempts. *Id.* In addition, suicide smocks and blankets may also be used to cover the inmate, as their texture and composition make it difficult for them to be used as a means of committing suicide. *Id.* Defendant affirms that the restraint cells are monitored by cameras and are located in proximity to the nursing station. *Id.*, Ex. A.

According to CMHCJ Restraint Procedure, an inmate may be placed in five-point restraints and his wrists and ankles are secured to the restraint bunk with suitable leather and plastic devices. *Id.*, Ex. B. A torso restraint is also applied to further restrain the inmate's movement. *Id.* The inmate is secured in a face-up position unless otherwise specified and a spit mask may be used if the positioning allows the inmate to spit at staff. The initial order for restraints lasts for only four hours, but may be renewed for an additional four hours. *Id.* Inmates in restraints must be monitored in 15- minute intervals by nursing staff. *Id.* In addition, nursing staff must observe and verbally communicate with the restrained inmates every two hours for signs of circulatory or respiratory dysfunction, abrasion, irritation or injury. *Id.* Provisions are also made for fluid intake, scheduled meals, and use of bed pans and urinals. *Id.* Release from restraints, after the inmate meets established behavioral criteria is to be documented.

Defendant claims that while she was the Chief Psychologist for CMHCJ during the time in question, she did not have any involvement with Plaintiff on any of the three dates in question. Paper No. 10, Ex. A. She further affirms that Plaintiff never complained to her verbally or by written notice of his treatment. Finally, Defendant states that (1) she did not have control over psychiatric medical decisions, including those determinations to place inmates in therapeutic restraints and (2) she did not have authority to unilaterally modify the procedure for use of same. *Id.*

It remains undisputed that Plaintiff has had serious psychiatric problems and was transferred to the CMHCJ on April 22, 2008, due to his history of harming himself and others.   *Id*., Ex.  A. According to Defendant, Plaintiff's self-injurious behavior continued, requiring hospitalization in the prison infirmary and hospital emergency rooms at the University of Maryland Medical Center, Baltimore/Washington Medical Center, Mercy Hospital, and Howard County General Hospital. Paper No. 10, Ex. A.   She affirms that Plaintiff was placed in therapeutic restraints over a dozen times in an attempt to prevent his self-injurious behavior and/or injury to others.  *Id*.

Plaintiff complains of the use of restraints on June 12, 2008, June 17, 2008, and October 9, 2008.  The records show that on June 12, 2008, a psychiatrist ordered his placement in therapeutic restraints following days of self-mutilating behavior involving self-inflicted cuts on Plaintiff's hands and neck and his banging his head against a wall.  *Id*., Ex. C.  The psychiatric order called for five-point restraints, face up, for up to 4 hours.   *Id*.

On June 17, 2008, a psychiatrist again ordered the use of five-point therapeutic restraints, face up, with Plaintiff assigned to an open-front seclusion cell because he had again threatened to harm himself and was refusing to take his medication.  *Id*., Ex. C.   Records show that Plaintiff's sheets and personal property were removed from the restraint cell and he was given a suicide smock. Defendant states that the conditions were maintained for an additional 4 hours by another psychiatrist, who also concluded that Plaintiff was in imminent danger of injuring himself and others.  Paper No. 10, Ex. C.

On October 8, 2008, a correctional officer found him cutting himself with a piece of porcelain from the sink.  *Id*.  He  was taken to the infirmary, but refused to have his wounds sutured. *Id*.  He was later transferred to the CMHCJ L-I Unit and ordered placed on suicide watch.  *Id*.  A psychiatrist ordered the use of five-point restraints for four hours with Plaintiff to be placed face-up

in the restraint cell.  Bed, sheets, and personal property were ordered removed from the restraint cell.  *Id.*, Ex. C.   Plaintiff was given a suicide smock.  *Id.*

Defendant affirms that she had no involvement with Plaintiff's care on the dates in question and had no control or authority over medical decisions to place inmates in therapeutic restraints or to modify the Therapeutic Restraints Procedure.   Indeed, nowhere does Plaintiff allege that Defendant was personally involved in the alleged constitutional deprivations.   No causal connection exists between Defendant's conduct and the alleged deprivation of Plaintiff's federal rights.  *See Guitierrez-Rodriguez v. Cartagena*, 882 F.2d 553, 559 (1ˢᵗ Cir. 1989).   In the absence of such allegations, there is no basis for imposing 42 U.S.C. § 1983  liability on Defendant.  *See Monell v. New York City Dep't of Social Services*, 436 U.S. 658, 691 (1978) (no *respondeat superior* liability under § 1983).  Further, even if Defendant had some supervisory authority over decisions related to the restraint procedure, supervisory culpability is not tied to Defendant as Plaintiff has failed to establish that: (1) she had actual or constructive knowledge that a subordinate was engaged in conduct that posed a pervasive risk of a constitutional injury; (2) her response to that knowledge was so inadequate as to show deliberate inference to or tacit authorization of the allege offensive practices; and (3) there was an affirmative causal link between Defendant's inaction and the alleged constitutional injury.  *See Shaw v. Stroud*, 13 F.3d 791, 799 (4ᵗʰ Cir. 1994).   Defendant affirms she was unaware of Plaintiff's allegations and as a psychologist, she is entitled to reply on the judgments of the psychiatrists who determined that Plaintiff should be restrained for his own well-being.   The Court finds Defendant is not culpable under a personal or supervisory liability theory.

The undersigned observes that the *pro se* Complaint does not particularize the nature of Plaintiff's constitutional claim.   Nonetheless, to the extent that Plaintiff is alleging that application of the restraints to a metal bunk on the L-1 Unit amounts to excessive force, comprises an

unconstitutional condition of confinement , or constitutes deliberate indifference to a serious medical need, the court finds no Eighth Amendment deprivation associated with the application of restraints on the dates in question.

Whether force used by prison officials was excessive is determined by inquiring if "force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U. S. 1, 6-7 (1992).  The court must look at: the need for application of force; the relationship between that need and the amount of force applied; the extent of the injury inflicted; the extent of the threat to the safety of staff and inmates as reasonably perceived by prison officials; and any efforts made to temper the severity of the response.  *See Whitley v. Albers,* 475 U. S. 312, 321 (1986).  Inherent in the protection afforded by the Eighth Amendment is the principle that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9-10.  Further, while the prisoner's injury need not be significant to violate the Eighth Amendment, something more than a *de minimis* injury is required in order to prove that excessive force was used.  *See Norman v. Taylor*, 25 F.3d 1259, 1263 (4th Cir. 1994) (en banc) (generally, no Eighth Amendment excessive force claim exists where any injury sustained by the plaintiff is *de minimis* and the force is not of a source "repugnant to the conscience of mankind").[4]

---

[4]    When determining whether injuries suffered by an inmate at the hands of prison officers are *de minimis*, a court should consider: (1) the context in which the injuries were sustained, *i.e.,* was there a disturbance which required the use of force; (2) did the inmate seek medical care; (3) were any injuries documented in the medical records generated shortly after the incident; and (4) whether the documented injuries consistent with the prisoner's allegations of excessive force or are they more consistent with the application of the amount of force necessary under the circumstances of the particular incident.  *See Taylor v. McDuffie*, 155 F.3d 479, 484 (4th Cir. 1998); *Stanley v. Hejirika*, 134 F.3d 629, 634 (4th Cir. 1998); *Riley v. Dorton*, 115 F.3d 1159, 1168 (4th Cir. 1997); *Norman*, 25 F.3d at 1264.

An inmate may set out a conditions of confinement claim by alleging that he was deprived of a basic human need which was objectively sufficiently serious and that subjectively prison officials acted with a sufficiently culpable state of mind to expose him to those conditions. *See Strickler v. Waters*, 989 F. 2d 1375, 1379 (4th Cir. 1993). Only extreme deprivations are adequate to satisfy the object component of an Eighth Amendment claim. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992). Such deprivations may be demonstrated by producing evidence of a serious or significant physical injury resulting from the challenged conditions, *see Strickler*, 989 F. 2d at 1380-81; *Rish v. Johnson*, 131 F.3d 1092, 1096 (4th Cir. 1997), or by demonstrating a substantial risk of serious harm resulting from the unwilling exposure to the challenged conditions. *See Helling v. McKinney*, 509 U.S. 25, 33-35 (1993). The key in determining whether prison conditions become cruel and unusual is to examine the effect on the inmate. *See Rhodes v. Chapman*, 452 U.S. 337, 364 (1981).

Finally, in order to state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants or their failure to act amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Deliberate indifference to a serious medical need requires proof that objectively the prisoner plaintiff was suffering from a serious medical need, and that subjectively the prison staff were aware of the need for medical attention but failed to either provide it or ensure the needed care was available. *See Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

As noted above, objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that inmates will be provided with unqualified access to health care). Proof of an objectively serious medical condition, however, does not end the inquiry. The second component of proof requires "subjective recklessness" in the face

of the serious medical condition.  *See Farmer*, 511 U.S. at 839-40.  "True subjective recklessness requires knowledge both of the general risk, and also that the conduct is inappropriate in light of that risk."  *Rich v. Bruce*, 129 F. 3d 336, 340 n. 2 (4th Cir. 1997).   "Actual knowledge or awareness on the part of the alleged inflicter....becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Virginia Beach Correctional Center*, 58 F. 3d 101, 105 (4th Cir. 1995), *quoting Farmer,* 511 U.S. at 844.   If the requisite subjective knowledge is established, an official may avoid liability "if [he] responded reasonably to the risk, even if the harm was not ultimately averted."  *Farmer*, 511 U.S. at 844.

It is uncontroverted that Plaintiff has had serious psychiatric problems involving repeated attempts to commit suicide and hurt himself.  It was only after periods of continued self-injurious behavior that mental healthcare professionals (psychiatrists) ordered Plaintiff placed face-up in five-point restraints tethered to a metal bunk in the Acute Care Unit of CMHCJ for four-hour intervals. Plaintiff's clothes and personal property were removed to prevent him from using them to further harm himself.  In two of the three therapeutic restraint instances it is documented that Plaintiff was given suicide smocks.[5]  He was monitored by nurses every 15 minutes.  No constitutional violation has been demonstrated.

## CONCLUSION

---

[5]     Defendant's record does not show that Plaintiff was provided a suicide smock or other material to cover himself on June 12, 2008.  There is, however, absolutely no allegation that Plaintiff suffered physical injury from the use of the therapeutic restraints and the removal of clothing and personal property. The Prison Litigation Reform Act states that "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." *See* 42 U.S.C. § 1997e(e).  It is settled law that a prior physical injury is required for a prisoner to recover damages for emotional and mental injury. *See Siglar v. Hightower*, 112 F.3d 191, 193-94 (5th Cir. 1997).

For the aforementioned reasons, the court shall grant Defendant's Motion for Summary Judgment.  Judgment shall be entered in favor of Defendant and against Plaintiff.  A separate order follows.


_____/s/_____
DEBORAH K. CHASANOW
United States District Judge